to our final argument today. I hope you can hear me. We are going to call number 21-60065 Miranda-Cruz v. Garland. Let me just check and make sure council is ready and can hear me. I've got Ms. Let's see, Mr. Schaefer. Can you hear me, Your Honor? I can hear you. Okay, great. And Ms. Robinson, can you hear me? Yes, Your Honor. I can hear you. Very good. Okay. First, we will hear from Mr. Schaefer. You may proceed, sir. Good morning, Your Honor. My name is Brian Schaefer. I represent the petitioners in this case. I'm appearing pro bono on behalf of the family. This appeal involves the application of the equitable polling motions to reopen and removal proceedings. The parties previously submitted a joint motion to remand in this case, which was denied by the court. The Department of Justice brief seems to ask for this case to be remanded as well. There's not much controversy between the parties about remand. And we would ask for this case to ultimately be remanded for the case to be evaluated properly under the polling standard. As far as equitable tolling. But, Mr. Schaefer, we have a decision from the BIA that addresses that issue, right? You're muted, sir. You're muted. I'm sorry. Addresses which issue, sir? The equitable tolling. I'm sorry. You're reviewing a decision from the BIA. We can't accept the party's agreement to remand a case. Okay. We will remand only if the standard of evidence is met, or the standard of review is met. And would you agree that the standard here is quite high? I would agree the standard is high. It's abuse of discretion. I would agree with that. Well, it's abuse of discretion. It's one of the more stringent standards. Our cases say we must affirm the BIA as long as this decision is not capricious without foundation of the evidence, or otherwise so irrational that it's arbitrary. So it's a high standard. My point is that I appreciate that the government wants to remand, but we still have to apply the normal standard. Okay. Yes, Your Honor. That's fine. And again, the standard is high, abuse of discretion. With that said, the court has warned the BIA from applying the equitable tolling standard too harshly. But under the facts of this case, that seems to be exactly what's happening. The Miranda Cruz family from Nicaragua, a country of extreme political arrest and political abuse. They arrived at the U.S. border and asked to apply for asylum. Based on their date of arrival, they were subject to the migrant protection protocols, also known as the Maine and Mexico policy, which caused them to remain in Mexico while the immigration court proceeded to proceed to court along. Counsel, can we get to, I think the nub of the issue is the 180 days. Now there were 15 days spent in captivity, assuming that we accept that as true, and 14 days spent in COVID-19 quarantine. So that gives us 151 days. Can you cover what was being done to be diligent for that period of time? I'm sorry, just to clarify, you mean the time excluding the quarantine? Correct. I mean, you had some justifiable reasons, things that would on their face seem to be valid reasons, but it's far from the entirety of the time allotted. So that's what I'm interested in. Okay. And to clarify, when you combine both those numbers, the quarantine numbers, you do get more than the 23 days that they missed the deadline by. Within the other... Judge Inglehart's question is, if you add up those two things, you still have a number of days that were available for the filing to be done. Yes. And that's what I was going to address. So with that said, what the facts were was that the father in the family contacted the court to tell him after he was released that he had missed his hearing. He wasn't informed of any of those things, that he had an abstention order. And then he was in Mexico subject to these things without access to counsel. And again, to use the standard in some other motion to reopen cases, when you're in a third country, you don't have access to counsel, you don't have access to the same information. And those facts are part of things that I guess kept him from being diligent when he did not learn of an abstention order until he returned to the country in March of 2020. So as far as filing a motion to reopen, it doesn't appear that he knew there was an abstention order. But everything you've told us, it seems like an answer to the question is, are things that were happening either unbeknownst to him? What I'm interested in is what was he doing? We know, I think there was some evidence that he was working at the time, that he was subject to the MPP. So you're right, he was out of the country. But I think the inquiry on due diligence is what was he doing to try to communicate, to reach out, to make contact with, to try to preserve his right to get his day. So I guess I'd like you to maybe re-answer the question focusing on what he was doing diligently. What Your Honor, what I would say is what he did diligently is he reached out to the court when he was released from captivity to say he missed his hearing. And he didn't hear any, he wasn't informed of anything else on that call. And there was no, there was nothing else he did diligently during that time because he was, you know, I believe when he asked the court if there's another hearing, there was no other hearing. You know, he did all, that's all he could do. That's all he was aware of what he should do until he learned of the abstention order in March of 2020. So did the BIA address the due diligence point? Sorry, as far as... Explain to me why it abused its discretion in finding no due diligence. And then further explain to me whether you've even raised this argument in your brief to our court. Okay. The BIA did do a paragraph addressing equitable tolling saying that he needed to pursue his rights diligently and just said he didn't. They didn't really get into too much of it. It did seem to do get into this count of the days thing that we talked about the 15 days doesn't acknowledge the quarantine. As far as, so it is a very quick argument from the court. Now, we did brief, sorry, I believe it was issue three. We briefed the idea that he was diligent and it was reasonable diligence that he was required to show. Again, factually speaking, the only thing we able to show that happened within that period of time, the non-hostage time and the non-quarantine time was that he contacted the court. We don't have any other facts during that time. So that's how I would answer that question. Okay. May I proceed? Please. Okay. So the BIA did not address whether the underlying in abstention order should have been, could have been rescinded related to the kidnapping that the IJ did, but the BIA adopted that decision. So subsequent to this BIA decision, the BIA issued a precedent decision matter of SLH and LBL holding that no and multiple traffic accidents could constitute exceptional circumstances for missing a hearing. Being held kidnapping and held for ransom would certainly constitute exceptional circumstances. The Miranda Cruz family submitted sworn statements, media reports, documented similar kidnappings and psychological related to their kidnapping. The general nature and circumstances surrounding MTP as a whole would also add to the exceptional circumstances. The family was held hostage for 14 days, witnessing and experiencing ruthless trauma. Eventually the Miranda Cruz family captivity ended on release. The public contacted the court card, informed him that he missed his hearing. The court didn't notify him of the in absentia order or of any future hearings. Eventually, like I said, in March, 2020, they came back to the United States. Unfortunately, that was when the world was beginning to shut down during the whole beginning of the COVID pandemic. They were placed in quarantine. And upon release, when they met with pro bono counsel, they immediately and diligently filed a motion to reopen. Again, it was 23 days past the 180 day statutory deadline. This court has held its final deadline can be can be actively told. And it is that the Supreme Court has recognized that it is an important safeguard to ensure proper and lawful disposition. It's also been acknowledged by the Supreme Court that the core principles of equitable tolling is to escape the evils of archaic rigidity and to correct particular injustices. I believe in this case, that's what we are dealing with. And with all the facts. When was you have you have before you when the deadline what the date of the deadline was that they missed for filing the date of the deadline that they missed the deadline, the date of the deadline, I believe it would have been like the 28th of September, I'm sorry, of March. And they filed it on the 16th of April, which was about 20 plus 23 days. When so the quarantine on what date with a quarantine? I don't know offhand. I don't know the exact dates in the record. I don't know exactly. The BIA did not address the quarantine. So it's not a decision or that it was addressed by the VA. Do you have anything else for his counsel? The only other thing I would add, Your Honor, before we begin getting into those days, and the other thing is that I would add is, and this goes to the capricious or arbitrary nature of the situation. After MPP ended, as we know, it bounced around a bunch of different courts and upstream court and ended started and everything else. But after it ended, EOIR issued a guidance related to MPP and motions to reopen, acknowledging the high number of in absentia rates and other procedural issues with MPP, encourage the BIA to consider these issues, and to give the parties a fair opportunity to develop and present represent their respective cases. In this case, the BIA didn't even acknowledge it. They didn't even address that he was subject to MPP. Wait, did the petitioner make the argument about MPP to the BIA? I believe so. Yes, because they did mention being subject to MPP in their briefing, which again, the statement by the BIA, the statement in the BIA that they say was working in Mexico is an acknowledgement of MPP, but not a application of how it would apply to this case. I mean, it's been rescinded. I think it's been rescinded, right? MPP? Yeah. As a policy, it's been rescinded. Yeah, so but while it was in place, it was a policy of the United States government. It was, Your Honor, right. So I can't imagine that that could count as an extraordinary circumstance for purposes of equitable tolling. I'm not necessarily arguing that it's an extraordinary circumstance. What I'm arguing or wanted to point out to the judge is when we're trying to decide whether it was arbitrary or capricious, this decision by the BIA, I'm sorry, the director of EOIR issued this guidance related to motions to reopen with MPP. And what would happen, practically speaking, is we were talking about due diligence and everything. The Miranda Cruz family, by being diligently and filing their motion to reopen, weren't able to use this guidance. And had they waited and not exercised their due diligence, all of a sudden this guidance might apply. That seems to be arbitrary, so to speak. And as far as, again, motions to reopen to MPP, the Transactional Records Access Clearinghouse or TRAC, which tracks immigration decisions and other agency decisions, shows that there were about 1,000 MPP cases have been reopened, and there were only 30,000 removal decisions that were made. And there's a fairly high number of cases that have been reopened, whether the... And I can't... Those stats don't tell me whether this was pre-guidance, post-guidance. What it says is this was all... Those cases that have been reopened have been since January 21. That's the date on TRAC. Thank you, counsel. I think you have time for rebuttal. Ms. Robinson. Yes, Your Honor. Thank you. So, we agree that this case should be remanded for a consideration of equitable tolling. And just briefly, there are three factors that I would bring to the Court's attention. The big issue that we see with the Board's decision here is that instead of acknowledging the 180-day deadline had passed and then explicitly counting for the factors raised by the petitioners and determining whether it should be tolled, the Board treated compliance with the deadline itself as conclusive. And if the factors raised by petitioner tolled the time, the motion to reopen would have been filed within the 180 days, which we believe distinguishes this case from others that this Court has considered. Are you saying the BIA just didn't consider equitable tolling? If I go and look at the BIA ruling, it doesn't even consider that? No, Your Honor. It did do an equitable tolling analysis on page 8 of the record. Okay. And in that analysis, it lists, it notes the response that petitioners here argued that the filing deadline should be equitably tolled. It notes their claims they were kidnapped, that they did not receive timely and accurate information, and because extraordinary circumstances, and then lists detention, quarantine, and lack of understanding. But then the Board says we are unpersuaded by this argument because the respondents claim to have been released from their captivity some 15 days after their capture in September 2019, that they did not file their motion to reopen until more than a month after the 180-day deadline. That's problematic for a couple of reasons. First... Is there anything inaccurate? That's it. That's accurate, right? Well, the one problem is that they did not file their motion to reopen more than a month late. How many? 23 days? Yes, Your Honor. But if you add the time in captivity, it was 188 days after their release from captivity. If you add in the quarantine period, so that's 29 days, that would be within 174 days. So I'm just taking those numbers because they're the 15 days from being kidnapping, being kidnapped, and the 14 days in quarantine are established in the record. I'm sorry, you're saying that because of the kidnapping and the quarantine, those days should not, they should, the 180-day clock is simply not running during those days? I'm saying that the problem is that if those factors told the time, then the case, it would have been timely filed and the court did not explicitly evaluate those arguments. Instead, the board just treated compliance with the deadline itself. So the fact that the motion was not timely filed as conclusive. And so remand would give the board the opportunity to explicitly consider the various constraints that were faced by the petitioners and evaluate if those factors impacted the time it took to file instead of simply stating that the motion was untimely filed and so therefore equitable tolling did not apply. And I would just, in response to the court's question, so the petitioners re-entered on March 25, 2020. The motion to reopen itself from the date of the in absentia order was due by my math on March 24, 2020. That's when the deadline was, March 24? Yes. When were they quarantined? So they were quarantined, I believe they would have been in detention and then in transfer for five days after their re-entry. So that takes us to March 30th or 31st of 2020. So they weren't detained until after the deadline ran? Yes. Okay. If you add then the 14 days, so if you add the 15 days that they were kidnapped, if you consider that time told and do not count it, then the motion would have, in effect, been due while they were in quarantine. So if quarantine was relevant, then it should be considered. And that's, I mean, that's not getting into the other arguments. The factor petitioner raised as far as the phone call to the court and being informed that there was a phone call to the immigration official. Is there any showing of diligence beyond making a phone call? Not in this record, Your Honor. However, I would note the court's caution that due diligence should be considered in light of all the circumstance. And the circumstances here include being returned to Mexico, being pro se, but also being impoverished upon release. It's stated that they were working, that they were misadvised by U.S. officials, then the global pandemic, and then upon their re-entry, the detention and quarantine period. And I'm not, I'm not stating that the board would find that these factors were sufficient. I'm merely stating the board should do the, should do this analysis in the first place and explicitly consider these factors rather than simply listing them and then saying it was untimely. Okay. Thank you. Anything else? Let me just take a look at court's indulgence. I guess the one last thing that I would just say is I would thank the court and council for their flexibility and for permitting me to appear remotely. And also I would thank Madam Clerk for coordinating. If anyone else has any questions, I'm happy to take them. Thank you, counsel. Mr. Schaffer, I guess rebuttal here doesn't, you're not strictly rebuttal since the government agrees with you, but do you have anything else to add in your remaining five minutes? Your Honor, you're correct. It is difficult to rebut when you're being agreed with. But the only other thing I would add is, you know, most of the case law that we talk about with due diligence, we're talking years and years. It's hard to distinguish whether that due diligence needs to happen within 180 days or outside of the 180 days. That's not always clear. And we are here about a matter of days, which makes this, again, so difficult to try to analyze the facts and the facts really weren't properly dealt with in the decision. And so we do agree that remand is appropriate in this case. Okay. Thank you, counsel. We will take the matter under advisement. Appreciate your time.